AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

| | |
|---|---|
| United States of America ) | |
| v. ) | |
| Angie Lisbeth Mendoza ) | Case No. 3:25-mj-70558 MAG |
| ) | |
| *Defendant(s)* | |

**FILED**
May 08 2025
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **April 4, 2025** in the county of **San Francisco** in the **Northern** District of **California**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) and (b)(1)(C) | Distribution and Possession with Intent to Distribute Fentanyl |

This criminal complaint is based on these facts:

See affidavit of DEA Task Force Officer Domenico Discenza

☑ Continued on the attached sheet.

/s/ Domenico Discenza
*Complainant's signature*

Domenico Discenza, DEA Task Force Officer
*Printed name and title*

Approved as to form  /S/ Sophia Cooper
AUSA  *Sophia Cooper*

Sworn to before me and signed in my presence.

Date: 05/08/2025

*Judge's signature*

City and state: San Francisco, CA    Hon. Alex G. Tse, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT AND CRIMINAL COMPLAINT

I, Domenico Discenza, a Task Force Officer with the Drug Enforcement Administration (DEA), having been duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for an arrest warrant and criminal complaint charging ANGIE LISBETH MENDOZA ["MENDOZA"] with possession with intent to distribute a mixture or substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propanamide, otherwise known as fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), occurring on or about April 4, 2025, in San Francisco, California, in the Northern District of California.

## SOURCES OF INFORMATION

2. The facts in this affidavit come from my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses. Where statements made by other individuals (including other Task Force Officers, Special Agents, and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant. My understanding of the facts and circumstances of the case may evolve as the investigation continues.

## AFFIANT BACKGROUND

4. I am a Sergeant at the San Francisco Police Department ("SFPD") and have

worked as a sworn officer for the SFPD for approximately 25 years.  I have been assigned as a Sergeant at the SFPD Narcotics Unit since March 2023, and prior to that I was a Sergeant at the Strategic Investigations/Homicide Detail for approximately nine years.  I am a sworn Case Specific Task Force Officer ("TFO") for the Drug Enforcement Administration ("DEA").  I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7).  I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of Federal law, including drug offenses.

5. In the police academy and at SFPD Detective School, I received narcotics-related and narcotics investigations training, covering all aspects of drug investigations, including identification of controlled substances, physical surveillance, utilization of confidential sources, interview techniques, interview techniques, undercover operations, and the general operation of drug trafficking organizations.  During my career, I have received hundreds of hours of continuing education training in law enforcement investigations, including training on drug trafficking investigations and specifically, fentanyl and methamphetamine investigations.

6. During my employment at SFPD, I have participated in many controlled substance investigations.  I have discussed the methods and practices used by drug traffickers with other law enforcement officers.  I have also had conversations with drug users and sellers over the course of my career.  I have also participated in many aspects of drug investigations including, but not limited to, undercover operations, records research, physical surveillance, and the execution of federal and state search warrants and arrest warrants that resulted in the arrest of suspects and seizure of controlled substances.  I have reviewed numerous reports related to drug investigations and arrests.  I have also prepared search warrants and arrest warrants related to various crimes against persons investigations.

7. Based on my training and experience, as well as conversations I have had with drug dealers and experienced law enforcement officers, I have become familiar with the practices of narcotics traffickers.  Specifically, I am familiar with methods that traffickers use to smuggle, safeguard, transport, and distribute narcotics, and to collect and launder the proceeds of drug

2

trafficking.

8.  I have also had discussions with other law enforcement officers and training in the packaging and preparation of narcotics, the methods of operation, and security measures that are often employed by narcotics traffickers.  I have examined documentation of various methods in which fentanyl and methamphetamine and other illicit drugs are smuggled, transported, possessed with intent to distribute, and distributed.  I am familiar with the appearance of marijuana, heroin, cocaine, methamphetamine, fentanyl, and other controlled substances.

9.  I am familiar with the facts and circumstances of the investigation through my participation in it based on several investigative techniques, including discussions with agents and officers from other law enforcement agencies, and review of records and reports relating to the investigation.  Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the statement is not being recounted verbatim but instead only in substance and in part.

## APPLICABLE STATUTE

10.  **Possession of Controlled Substance with Intent to Distribute**.  Under 21 U.S.C. § 841(a)(1), it is unlawful for any person to knowingly or intentionally possess with intent to distribute a federally controlled substance.  Under 21 C.F.R. § 1308.12, fentanyl is a Schedule II controlled substance.

## STATEMENT OF PROBABLE CAUSE

11.  At approximately 6:05 PM on April 4, 2025, San Francisco Police Department [SFPD] Officer Nguyen was conducting a narcotics spotting operation in the area of Larkin and Grove Streets in the Tenderloin District of San Francisco, in the Northern District of California.

12.  On the above date and time, Officer Nguyen observed an unknown subject, later identified as MENDOZA sitting in an alcove about 50 feet east of the northeast intersection of Larkin and Grove Streets.  Officer Nguyen observed MENDOZA pull a black plastic bag out of a red Grub Hub tote that was on the ground next to her.  Officer Nguyen observed an unknown (S1) male hand MENDOZA an unknown amount of U.S. currency.  Officer Nguyen then

3

observed MENDOZA reach into the black plastic bag and hand S1 an unknown amount of white-colored, suspected narcotics. Officer Nguyen observed S1 then leave the area, while MENDOZA placed the black bag back into the red Grub Hub bag and walked about 20 feet away from it.

13. Based on his training and experience, Officer Nguyen believed MENDOZA had just conducted a street-level, hand-to-hand transaction in which she sold S1 suspected narcotics. After observing the transaction, Officer Nguyen broadcast MENDOZA's description to an arrest team. Officer Nguyen described MENDOZA as wearing a black hoodie, black pants, black Nike shoes with white soles, and have a nose ring. Officer Nguyen advised the arrest team that the red Grub Hub bag was still on the ground by the alcove. The arrest team arrived and saw MENDOZA, matching the description provided by Officer Nguyen. MENDOZA was immediately arrested.

14. During a search MENDOZA incident to arrest, officers located the following items on her person:

- 1 cell phone;
- $185.00 in U.S. currency (in various denominations)

15. A search of the Grub Hub tote incident to arrest revealed a clear and unused glass cylinder pipe, a digital scale, and multiple baggies of suspected fentanyl inside the black plastic bag.

16. The fentanyl described above was tested via a TruNarc testing device and tested presumptive positive as such.



17. Based on my knowledge, training, experience, and consultation with other experienced officers, I believe the amount of fentanyl possessed (43.5 grams gross), the multiple baggies possessed, the various denominations of currency possessed, the digital scale, and totality of circumstances described above (including MENDOZA having engaged in a hand-to-hand narcotics transaction with S1) indicate that the suspected 43.5 grams of fentanyl seized from MENDOZA was possessed with the intent to distribute.

18. The fact that MENDOZA possessed a scale, which, in my training and experience, is something drug dealers use to weigh their drugs before conducting a sale to a prospective buyer, is further evidence that MENDOZA possessed the fentanyl with the intent to distribute the drugs.

19. Finally, the conclusion that MENDOZA possessed the fentanyl for sales purposes is reinforced by the fact the conduct occurred while in or near the area of Larkin Street and Grove Streets, an area notorious for a high volume of drug sales activity.

20. Accordingly, there is probable cause to believe MENDOZA possessed the fentanyl with the intent to distribute those drugs.

## CONCLUSION

21. Based on my training and experience, and the facts and circumstances set forth above, I believe probable cause exists to believe that on or about April 4, 2025, in the Northern District of California, MENDOZA possessed with the intent to distribute a mixture or substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propanamide, otherwise known as fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Accordingly, I respectfully request that the Court issue a criminal complaint and warrant for his arrest.

/s/
Domenico Discenza
Task Force Officer
Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 8th day of May 2025.  This complaint and warrants are to be filed under seal.

_____
HONORABLE ALEX G. TSE
United States Magistrate Judge